CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 0 7 2010

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT MURPHY, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> SARI GOFF, ET AL., <br><br> *Defendants*. | CIVIL ACTION No. 6:10-CV-00026 <br><br><br> MEMORANDUM OPINION <br><br><br><br> JUDGE NORMAN K. MOON |

Proceeding *pro se*, Plaintiffs[1] filed the instant complaint alleging, *inter alia*, violations of their substantive due process rights under the Fourteenth Amendment to the United States Constitution, based on allegations that Defendants[2] interfered with Plaintiffs' fundamental right to maintain close family relations. Plaintiffs also filed a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which I granted. Under 28 U.S.C. § 1915, district courts have a duty to screen initial filings and dismiss a complaint filed *in forma pauperis* "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted. . . ." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006). As explained herein, Plaintiffs'

---

[1] The complaint is styled as "Robert Murphy and Robert Murphy, next friend for G.M., A.M., and R.M., minor children."

[2] Plaintiffs name 66 defendants in the style of the complaint, and several other parties are named in the complaint. Defendants identified in the style of the complaint include "**JOHN & JANE DOES 1-30, Individually and in their official capacities,**" and "**JOHN & JANE DOES 1-9, Members of the Charlotte County Social Services Board, Individually and in their official capacity.**"

constitutional claims filed under 42 U.S.C. § 1983[3] will be dismissed for failure to state a claim on which relief may be granted. I will decline, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the remaining claims, and the complaint will be dismissed without prejudice and stricken from the court's active docket.

## I.

Before addressing Plaintiffs' failure to state a claim on which relief may be granted, I observe that the style of the complaint names 66 defendants, and the complaint is 29 pages long, includes 17 counts, and fails to follow Fed. R. Civ. P. 8, which requires that each allegation be "simple, concise, and direct." Although district courts have a duty to construe *pro se* pleadings liberally, a court is not obliged to ferret through a complaint, searching for viable claims. *See Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (although *pro se* complaint contained potentially viable claims, the court properly dismissed without prejudice under Fed. R. Civ. P. 8 since

---

[3] Not a source of substantive rights itself, § 1983 provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). To state a claim under § 1983, a plaintiff must allege sufficient facts to establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs state that "[t]his Court has jurisdiction and venue under 42 U.S.C. § 1983, 42 U.S.C. § 1985, [and] 42 U.S.C. § 1988. . . ." However, Plaintiffs have not otherwise attempted to assert any federal claims under §§ 1985 and 1988. "To plead a violation of § 1985, the plaintiffs must demonstrate with specific facts that the defendants were 'motivated by a specific class-based, invidiously discriminatory animus to [ ] deprive the plaintiff[s] of the equal enjoyment of rights secured by the law to all.'" *Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). There are no factual allegations in the complaint as to any class-based, invidiously discriminatory animus. Plaintiffs' invocation of § 1985 amounts, at most, to a legal conclusion, and thus fails to assert any plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009); *Gooden v. Howard County, Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) (*en banc*) (requiring plaintiffs alleging unlawful intent in conspiracy claims under § 1985 to "plead specific facts in a non-conclusory fashion to survive a motion to dismiss"). Similarly, Plaintiffs cursorily invoke § 1988, "**Proceedings in vindication of civil rights**," which sets forth the applicability of statutory and common law in civil rights actions in United States district courts, and permits the award of reasonable attorney's fees and expert fees in civil rights actions to a prevailing party in a civil rights suit. Given that Plaintiffs' complaint is being dismissed for failure to state a claim on which relief may be granted, and Plaintiffs thus have not obtained "at least some relief on the merits of [their] claim[s]," Plaintiffs are not prevailing parties, and are not eligible for an award of attorney's fees under § 1988. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

voluminous, repetitive, and conclusory complaint is not a "short and plain statement" of facts and legal claims; the court specifically observed that dismissal under Rule 8 was proper because such a complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); *see also Spencer v. Hedges*, 838 F.2d 1210 (Table) (4th Cir. 1988). In the context of Fed. R. Civ. P. 8, it is clear that a plaintiff must provide enough detail to illuminate the nature of the claim and allow defendants to respond. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). And, although district courts have a duty to construe *pro se* pleadings liberally, a *pro se* plaintiff must nevertheless allege facts that state a cause of action, and district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (adding that "[d]istrict judges are not mind readers"); *see also Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) (district court is not the *pro se* plaintiff's advocate, *sua sponte* developing statutory and constitutional claims the plaintiff failed to raise on the face of the complaint); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the *pro se* plaintiff).

Here, the complaint does not comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. In addition to the call in Rule 8(a)(1) for "a short and plain statement of the grounds for the court's jurisdiction," Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) requires that each averment of a pleading be "simple, concise, and direct." A pleading "does not have to set out in detail the facts on which the claim for relief is based," 2 Moore's Federal Practice ¶ 8.04[1], at

8-22 (3d ed. 2002), but must give the court and the defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swirkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007)). A court may dismiss a complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

> Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 555 n. 3. Here, the complaint is not a "short and plain statement," nor is it "concise and direct," and it does not provide the Defendants "fair notice" of the claims and facts upon which they are based. Therefore, because the complaint does not comply with Rule 8, it could be dismissed on that alternative ground.

## II.

As best I can discern from the complaint, it appears that some of the parties Plaintiffs have named as Defendants are entitled to absolute immunity. To the extent Plaintiffs name any state court judges in their complaint, it is well-established that judges are absolutely immune from liability for damages arising out of their judicial actions. *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) (citing *Bradley v. Fisher*, 80 U.S. 335 (1872); *Stump v. Sparkman*, 435 U.S. 349 (1978)). Although the Supreme Court of the United States has held that judicial immunity does not extend to injunctive relief, *Pulliam v. Allen*, 466 U.S. 522, 536-543 (1984), Congress has amended § 1983 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . .

unless a declaratory decree was violated or declaratory relief was unavailable." Based on this amendment, courts have held that § 1983 limits the type of relief available to plaintiffs who sue judicial officers to declaratory relief. *See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000); *Johnson v. McCuskey*, 72 Fed. Appx. 475, 477 (7th Cir. 2003).

The doctrine of judicial immunity is expansive. *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985) (quoting *Bradley*, 80 U.S. at 347). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356-357. Rather, the doctrine of judicial immunity is only overcome when a judge's actions are not taken in his judicial capacity or when they are taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). With respect to the first inquiry, courts must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges." *Forrester v. White*, 484 U.S. 219, 227 (1988). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. With respect to the second inquiry, courts must distinguish between actions that are taken in the "clear absence of all jurisdiction" over the subject matter, which are not afforded the protection of judicial immunity, and actions that are merely in "excess of jurisdiction," which are afforded such protection. *Id.* at 356. The Supreme Court has emphasized that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.* at 356.

Applying these principles, I conclude that any state court judge Plaintiffs may have attempted to name as a Defendant in this matter is entitled to judicial immunity, given that

Plaintiffs do not complain of any acts that were not judicial in nature. Such acts do not become non-judicial merely because they were allegedly taken in error. *Mireles*, 502 U.S. at 13. Additionally, Plaintiffs' allegations do not suggest that any judge acted in the clear absence of all jurisdiction. A judge acts in the complete absence of all jurisdiction only "if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides." *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see also Green v. Maraio*, 722 F.2d 1013, 1017 (2d Cir. 1983); *Marshall v. Bowles*, 92 Fed. Appx. 283, 284-85 (6th Cir. 2004) (holding in a § 1983 action arising from a custody dispute that a domestic relations judge was entitled to judicial immunity as to all of the plaintiff's claims, including her claim that the judge violated her First Amendment rights by issuing a gag order that stopped the plaintiff's cable show); *Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990) ("[e]ven if the speech-restrictive order was improper, Justice Soloff is immune from section 1983 damages because she did not act in the 'clear absence of all jurisdiction'").

Similarly, as best I can determine on the face of the instant complaint, any guardian *ad litem* appointed to represent the minor children in this case is immune from liability under § 1983, given that the complaint discloses no actions complained of that occurred outside of the proceedings during which such person was acting as guardian *ad litem*. *See Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994) ("[e]ven if Asbill lied to the judge in open court, she was still acting as the guardian, and is immune from § 1983 liability").[4]

---

[4] As discussed further elsewhere in this memorandum opinion, a private person such as a guardian *ad litem*, or any other court-appointed attorney, is generally unsusceptible to § 1983 claims. To succeed on a § 1983 claim, a plaintiff must prove three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). It is well-settled that a "person charged [under Section 1983] must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged
(continued...)

Plaintiff also asserts in Count III that the actions of certain Defendants, apparently employees of the Charlotte County Department of Social Services ("CCDSS"), should be "construed to be analagous [*sic*] to the role of a prosecutor," and that these Defendants therefore "had a duty to present exculpatory evidence to both Plaintiff Robert Murphy, and to the Court, and that duty was breached, causing a deprivation of Plaintiffs' fundamental civil right to the Integrity of the Family and the Parent-Child relationship." However, *Vosburg v. Department of Social Services*, 884 F.2d 133 (4th Cir. 1989), recognized that social workers are entitled to absolute immunity for "those activities . . . that could be deemed prosecutorial." *Id.* at 138.

### III.

Count III of the complaint, "42 U.S.C. § 1983 Violation of Plaintiffs' Civil Rights," alleges that a number of Defendants were biased against Plaintiff Robert Murphy and had "personal, family and historical affinities and reltionships [*sic*]" with Laura Murphy, the mother of Robert Murphy's minor children, and that "[t]he actions and decisions of" a number of Defendants (apparently in removing the children from Robert Murphy's custody, pursuing foster care proceedings, and seeking protective orders), "were ultimately determined by their own

---

[4](...continued)
in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991)) (other citations omitted). "[P]rivate activity will generally not be deemed 'state action' unless the state has so dominated such activity as to convert it into state action: 'Mere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* at 507 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). *See also Hall v. Quillen*, 631 F.2d 1154, 1155-56, n. 2-3 (4th Cir. 1980) (stating that court-appointed counsel does not act under the color of state law for § 1983 purposes); *Polk County v. Dodson*, 454 U.S. 312, 317-24 (1981) (stating that public defenders representing defendants in criminal proceedings do not act under the color of state law for § 1983 purposes). As also discussed *infra*, conclusory allegations of a conspiracy are legally insufficient. *See Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."); *see also Roginsky v. Blake*, 131 F. Supp. 2d 715, 719 (D. Md. 2000) ("Plaintiff offers no detailed factual account to show a conspiracy with a state actor. For example, Plaintiff's claim that Judge Nalley was involved in a conspiracy as evidenced by his ruling on a continuance is not enough.").

agency to be unfounded."[5] "Plaintiffs allege that Defendants' actions described [in Count II of the complaint] were a violation of Plaintiffs' Fourteenth Amendment Due Process rights, and Plaintiffs' federally recognized rights to maintain their family relationships without government

---

[5] I may take judicial notice of matters of public record. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986) ("we are not precluded in our review of the complaint from taking judicial notice of items in the public record"); *American Intern. Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*, 628 F. Supp. 2d 674, 679 (E.D. Va. 2009). I take judicial notice that Robert Murphy is currently involved in a number of actions in the courts of Charlotte County, Virginia, regarding the following: a dispute regarding support payments for his children while they were in temporary foster custody, which has been remanded from the circuit court to the juvenile and domestic relations court because Mr. Murphy failed to perfect an appeal bond (case no. CL09000160-00); a divorce (case no. CL08000140-00); a petition to obtain confidential child protective services records (case no. CL1000003500); and appeals of orders of the juvenile and domestic relations court regarding custody and visitation (case no. CL08000250-01, -02, & -03). Although my review of the complaint leads me to determine that Plaintiffs have failed to state a claim on which relief may be granted, it is arguable that this court lacks jurisdiction to entertain Plaintiffs' § 1983 claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prohibits "lower federal courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). Accordingly, when the success of a federal claim depends upon a determination "that the state court wrongly decided the issues before it," a federal court lacks jurisdiction to entertain its merits. *See Wilmore*, 407 F.3d at 279 (citing *Brown & Root v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (citations omitted)). The doctrine ensures that federal district courts exercise only original jurisdiction and guarantees that review of state court judgments is conducted at the federal level only by the U.S. Supreme Court, as Congress intended. *See Brown & Root, Inc.*, 211 F.3d at 198-99. It is difficult to determine on the face of the instant complaint, but it is possible that Plaintiffs' § 1983 claims may be barred from consideration by the *Rooker-Feldman* doctrine because they are "inextricably intertwined" with issues that either are pending or were already considered and decided in custody hearings by several state courts, particularly the juvenile and domestic relations court and circuit court of Charlotte County. While Plaintiffs attempt to re-hash these issues in federal court, the state courts have already considered these issues (or have them pending) and weighed the evidence presented by the Defendants in the various custody hearings. This court may not re-weigh the evidence and the credibility of witnesses that were before the state courts in the various custody proceedings, and a liberal construction of the complaint suggests this is what Plaintiffs seek. Recognizing that Plaintiffs' due process rights were violated in light of certain Defendants' alleged misconduct would require a determination that one or all of the state courts wrongly decided the issues before them. This court is prohibited from making such a determination. Numerous other courts have applied the *Rooker-Feldman* doctrine in cases similar to the instant case, where a parent claims that the state court decision was unconstitutional or was premised upon constitutional violations by agents of the state. *See, e.g, Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005); *Simmons v. Huff*, 70 Fed. Appx. 136 (E.D. Va. 2003); *Duby v. Morgan*, 901 F. Supp. 215, 216 (S.D. W. Va.1995). If Plaintiffs wish to address the alleged violations of due process that occurred in conjunction with the state court proceedings, they may not lodge a collateral attack in federal court; rather, they must instead seek recourse in the state court system. *See Feldman*, 460 U.S. at 482; *Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986) ("Where a constitutional issue could have been reviewed on direct appeal by the state appellate courts, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under 42 U.S.C. § 1983."). Accordingly, the instant complaint could be dismissed because the Court lacks jurisdiction to entertain Plaintiffs' § 1983 claims under *Rooker-Feldman* doctrine. Nonetheless, because Plaintiffs' complaint, construed liberally, raises issues of substantive due process, I will address the deficiencies of Plaintiffs' claims.

actions which sever or alter the parent/child relationship."

Although Plaintiffs state that Defendants' actions "were undertaken with bad faith, malice, were ill conceived, and constituted arbitrary abuse of power which shocks the conscience of a reasonable observer," their allegations are conclusory, present no arguable basis in fact, and fail to state a legal claim upon which relief may be granted. As I have previously observed, principles requiring generous construction of *pro se* pleadings are not without limits. *Beaudett v. City of Hampton*, 775 F.2d at 1277. A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). And, although district courts have a duty to construe *pro se* pleadings liberally, a *pro se* plaintiff must nevertheless allege facts that state a cause of action, and district courts are not required "to conjure up questions never squarely presented to them." *Beaudett*, 775 F.2d at 1278 (adding that "[d]istrict judges are not mind readers"). Plaintiffs are advised that, although "detailed factual allegations" are not required, their "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; in other words, their "factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (citations omitted). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *See Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Plaintiff is further advised that courts are entitled to dismiss claims when the pleadings are "conclusory" and "do not plausibly establish" that the alleged misconduct occurred. *Id.*, 556 U.S. at ___, 129 S. Ct. at 1951 ("[i]t is the conclusory nature of respondent's allegations, rather

than their extravagantly fanciful nature, that disentitles them to the presumption of truth").

Plaintiffs allege that "Defendants violated 42 U.S.C. § 1983 by negligently, recklessly, indifferently, willfully, and wantonly failing to protect Plaintiffs' rights as described herein." Although a state agency's *failure* to act generally does not state a claim for a constitutional violation, "when a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause and imposing 'some responsibility for [the child's] safety and general well-being.'" *Doe ex rel. Johnson v. South Carolina Dept. of Social Services*, 597 F.3d 163, 175 (4th Cir. 2010) (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200 (1989)).

> Such responsibility, in turn, includes a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security. This does not mean that social workers will be duty-bound to protect the child from unknown harm or dangers. Nor "does [it] mean that every child in foster care may prevail in a section 1983 action against state officials based on incidental injuries or infrequent acts of abuse."

*Id.* (quoting *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987). Significantly, "[n]egligence, and even carelessness, on the part of such officials that results in harm to the child will not support a claim." *Id.* Accordingly, Plaintiffs' claims of negligence fail to state a claim on which relief may be granted.

"'[W]here it is alleged and the proof shows that the state officials were deliberately indifferent to the welfare of the child,' liability may be imposed." *Id.* (quoting Taylor, 818 F.2d at 797). "Such '[a] claim of deliberate indifference, unlike one of negligence, implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.'" *Id.* (quoting *White by White v. Chambliss*, 112 F.3d 731,

737 (4th Cir. 1997)). However, Plaintiffs' conclusory allegations and naked assertions of harm are insufficient to state a claim on which relief may be granted.[6] *See Iqbal*, 556 U.S. at ___, ___, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557).

Although Plaintiffs invoke "federally recognized rights to maintain their family relationships without government actions which sever or alter the parent/child relationship," the complaint indicates that a state court overruled the suggestion of the CCDSS that Mr. Murphy's minor children be placed in a foster home, and there is only a naked assertion that the parental relationship here was "severed" or "altered." Given the conclusory nature of the allegations in the complaint, I am unable to determine that Plaintiffs have identified any particular act of any Defendant that was itself a violation of a constitutional right. To be sure, parents have a fundamental liberty interest in the care, custody, and control of their children. *See, e.g., Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). This interest, however, is not absolute, as it "is limited by the compelling government interest in the

---

[6] For example, the complaint suggests that one of the Plaintiffs, a minor child, had previously "had inappropriate sexual contact with a small child," but that CCDSS had nonetheless placed him in a temporary foster care situation where he "slept in the same room with a five year old boy. . . ." Assuming the truth of this allegation, it does not indicate that anything actually happened, *i.e.*, it does not indicate any actual harm for which a state actor could be held responsible, and it does not suggest that any state actor was deliberately indifferent to the minor child's welfare. *see Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm. . . ."); *Doe ex rel. Johnson*, 597 F.3d at 175 (the standard is deliberate indifference to the welfare of the child, not negligence). To the extent a sufficient allegation of harm could be gleaned from the complaint, I pause to repeat that the complaint fails to follow Fed. R. Civ. P. 8, which requires that each allegation be "simple, concise, and direct." A court is not obliged to ferret through a complaint, searching for viable claims. *See Holsey v. Collins*, 90 F.R.D. 122 (D. Md.1981) (although *pro se* complaint contained potentially viable claims, the court properly dismissed without prejudice under Fed. R. Civ. P. 8 since voluminous, repetitive, and conclusory complaint is not a "short and plain statement" of facts and legal claims; the court specifically observed that dismissal under Rule 8 was proper because such a complaint "places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be," and "imposes a similar burden on the court to sort out the facts now hidden in a mass of charges, arguments, generalizations and rumors"); *see also Spencer v. Hedges*, 838 F.2d 1210 (Table) (4th Cir. 1988). Although district courts have a duty to construe *pro se* pleadings liberally, a *pro se* plaintiff must nevertheless allege facts that state a cause of action, and district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (adding that "[d]istrict judges are not mind readers").

protection of children – particularly where the children need to be protected from their own parents."[7] *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).

As the United States Court of Appeals for the Fourth Circuit explained in *Hodge v. Jones*, 31 F.3d 157 (4th Cir. 1994), "[t]he concept of familial privacy has been restricted by the Supreme Court to (1) thwarting governmental attempts to interfere with particularly intimate family decisions, and (2) voiding government actions that sever, alter, or otherwise affect the parent/child relationship." *Id.* at 163 (citations omitted). It is this second aspect of familial privacy that is most relevant to the analysis presented here.[8] The Supreme Court cases relied on by the court in *Hodge* suggest that this aspect of the liberty interest in familial relations applies to situations where government action affects the very existence of the parent/child relationship, or in other words, where the government action deprives a parent of the care, custody, or control of his or her child. *See id.* at 163 & n. 7 (citing *Santosky*, 455 U.S. at 753 (termination of parental rights); *Little v. Streater*, 452 U.S. 1, 13 (1981) (determining paternity); *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972) (unwed father's fundamental right in care and custody of children)). The decisions of other Courts of Appeals are in accord with this view of the right to familial privacy. *See, e.g., Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 590-91 (6th

---

[7] The precise confines of the right to familial privacy are nebulous. *See Hodge v. Jones*, 31 F.3d 157, 164 (4th Cir. 1994) ("There is little, if any, clear guidance in the relevant caselaw that would permit us to chart with certainty the amorphous boundaries between the Scylla of familial privacy and the Charybdis of legitimate government interests.").

[8] The first aspect, *i.e.*, the protection of "intimate family decisions," deals with things such as family living arrangements, maternity leave, abortion, birth control, and children's education. *See Hodge*, 31F.3d at 163 & n. 6 (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 499-500 (1977); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974); *Roe v. Wade*, 410 U.S. 113, 154 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)).

Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 8-9 (1st Cir. 1993); *Duchesne v.. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977). And, post-*Hodge*, the Fourth Circuit has addressed the right in situations where there was a deprivation of care, custody, or control. *See, e.g., Martin v. Saint Mary's Dept. Soc. Servs.*, 346 F.3d 502, 504 (4th Cir. 2003); *Renn ex rel. Renn v. Garrison*, 100 F.3d 344, 347 (4th Cir. 1996).

Liberally construed, the complaint indicates that Robert Murphy was deprived temporarily of the custody of his children, that numerous hearings were conducted (thus apparently affording Mr. Murphy at least some measure of due process), that a foster home placement for the children was ultimately rejected by a state court judge, and that custody of the children remains with the parents. Thus, it appears that the only alleged action of the Defendants that I can discern from the instant complaint that might constitute a violation of Robert Murphy's right to familial privacy is the temporary removal of his children from his custody.[9] To create liability under § 1983, however, the removal must have been "so ill-conceived or malicious that it 'shocks the conscience.'" *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Although there are undoubtedly situations in which a caseworker is justified in taking emergency custody of a child, even where

---

[9] Although the complaint could be construed to contain an allegation that certain Defendants may have communicated a threat to Robert Murphy to withhold custody of his children until he "admit[ted] their false allegations of abuse," the complaint does not indicate that Mr. Murphy capitulated to this threat, or that any Defendants made good the threat. If so, such action might well "shock the conscience" and therefore constitute a violation of substantive due process. *See Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1124-25 & n. 1 (3rd Cir. 1997). However, given that the complaint indicates either that Mr. Murphy did not capitulate, or that Defendants did not make good the threat, and the children apparently remain in their parents' custody, this allegation constitutes, at most, an *attempted* deprivation of Mr. Murphy's care, custody, or control of his children. Consistent with the plain language of § 1983, which conditions liability on "the deprivation of any rights, privileges, or immunities," an attempted deprivation of a constitutional right does not give rise to a claim under § 1983. *See, e.g., Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 590-91 (6th Cir. 2008); *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992); *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989); *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir. 1987); *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir. 1984).

later investigation proves no abuse occurred, "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused, or is in imminent danger of abuse." *Croft*, 103 F.3d at 1126. Thus, "at an irreducible minimum, a case worker must have no less than a reasonable suspicion of child abuse (or imminent danger of abuse) before taking a child into custody prior to a hearing." *Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 23-24 (1st Cir. 2001) (citations omitted).

In this case, the allegations of the complaint indicate that CCDSS received "an affidavit in support of a Petition for removal" that constitutes sufficient evidence for a "reasonable suspicion," and that the children were being subjected to "emotional abuse by Plaintiff Robert Murphy and medical neglect by mother Laura Murphy." (The complaint also states that "the required '5 day Preliminary Removal Hearing' was held. . . .") Although Plaintiffs may have attempted to contend that the Defendants ignored or failed to follow up on a variety of supposedly exculpatory evidence, the Fourth Circuit has stated simply and explicitly that "[i]t does not shock the conscience to hear that defendants removed a child in emergency action from the custody of a parent suspected of abus[e] . . . , based upon some evidence of child abuse." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Accordingly, because the complaint suggests that Defendants had "some evidence" that the children in this case were being abused or neglected, their temporary removal from Robert Murphy's custody does not shock the conscience and therefore cannot give rise to liability under § 1983.

For these reasons, Count III will be dismissed.

### IV.

Count IV seeks, among other things,

a declaratory judgment from this Court declaring Code of Virginia 16.1-252(G), and more particularly the phrase "or the local Department of Social Services" to be an unconstitutional infringement of the well established liberty interest of parents and children in the care and companionship of each other, as recognized by the Ninth Amendment to the U.S. Constitution, and a violation of Plaintiffs' and other similarly situated families' procedural and substantive due process rights under the Fourteenth Amendment.

Code of Virginia § 16.1-252, subtitled "Preliminary removal order; hearing," sets forth the procedures and requirements for issuing "[a] preliminary removal order in cases in which a child is alleged to have been abused or neglected. . . ." Va. Code 16.1-252(A). In these cases, a preliminary removal order may be issued by a state juvenile and domestic relations court "after a hearing wherein the court finds that reasonable efforts have been made to prevent removal of the child from his home. The hearing shall be in the nature of a preliminary hearing rather than a final determination of custody." *Id.* The subsection that Plaintiffs seek to have declared unconstitutional, Va. Code 16.1-252(G), states as follows:

> At the conclusion of the preliminary removal order hearing, the court shall determine whether the allegations of abuse or neglect have been proven by a preponderance of the evidence. Any finding of abuse or neglect shall be stated in the court order. However, if, before such a finding is made, a person responsible for the care and custody of the child, the child's guardian ad litem *or the local department of social services* objects to a finding being made at the hearing, the court shall schedule an adjudicatory hearing to be held within thirty days of the date of the initial preliminary removal hearing. The adjudicatory hearing shall be held to determine whether the allegations of abuse and neglect have been proven by a preponderance of the evidence. Parties who are present at the preliminary removal order hearing shall be given notice of the date set for the adjudicatory hearing and parties who are not present shall be summoned as provided in § 16.1-263. The hearing shall be held and an order may be entered, although a party to the preliminary removal order hearing fails to appear and is not represented by counsel, provided personal or substituted service was made on the person, or the court determines that such person cannot be found, after reasonable effort, or in the case of a person who is without the Commonwealth, the person cannot be found or his post office address cannot be ascertained after reasonable effort.
>
> The preliminary removal order and any preliminary protective order issued shall

remain in full force and effect pending the adjudicatory hearing.

(Emphasis added.)

Plaintiffs have not alleged facts indicating how the statute – or, more specifically, its reference to "the local department of social services" – infringes upon Plaintiffs' (or any other parties') constitutional rights (substantive due process rights or any other constitutional rights). As I have already stated, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Nor, for that matter, do Plaintiffs have standing to seek a prospective declaratory judgment that the state statute is unconstitutional. In order to have standing to bring a claim in federal court, a plaintiff must show "injury in fact," causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). "Injury in fact" is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* In other words, to obtain prospective declaratory relief, a plaintiff must show a substantial likelihood of future injury, which would give rise to an actual controversy, and which Plaintiffs' complaint does not indicate. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983); *Simmons v. Poe*, 47 F.3d 1370, 1382-83 (4th Cir. 1995); *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 837 (6th Cir. 2001) (citing *Landers Seed Co., Inc. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir. 1994); *Facio v. Jones*, 929 F.2d 541, 544-45 (10th Cir. 1991); *Adkins v. Rumsfeld*, 370 F. Supp. 2d 426, 431-32 (E.D. Va. 2004). Accordingly, Plaintiffs' claim seeking a declaratory judgment will be dismissed for failure to state a claim on which relief may be

granted.[10]

## V.

One section of the complaint is sub-headed as "Counts X, XI, XII and XIII," and alleges that "Defendant Robert Lanaham was hired by Plaintiff Robert Murphy to conduct individual 'psychiatric evaluations'"; this section of the complaint includes the allegation that "Defendant Lanahan's actions constituted extortion of the unconscionable fees paid him by plaintiff. . . ." Elsewhere, the complaint identifies Lanahan as "a Psychologist in private practice in Roanoke, Virginia who was hired to conduct individual psychiatric evaluations of Robert and Laura Murphy pursuant to" an order of the "Charlotte County Virginia Juvenile and Domestic Relations Court issued on or about February 12, 2008."[11]

Plaintiffs fail to state a claim against Lanahan because the complaint contains no allegations of fact suggesting that Lanahan either engaged in state action or in a conspiracy with

---

[10] This claim could arguably be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous. Whether a claim is frivolous is within the discretion of the court considering the *in forma pauperis* application. *Mercier v. Tandy*, 503 F. Supp. 2d 797, 799 (E.D. Va. 2007). A claim is frivolous if it is based on allegations that are irrational or incredible, regardless of whether any facts that may be judicially noticed contradict the allegations. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). In addition, a claim is frivolous if it is "based on an indisputably meritless legal theory" – for example, if the claim purportedly rests on a legal interest that clearly does not exist. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). In reviewing a complaint, the court may "pierce the veil of [its] factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.*

[11] The instant complaint was filed on May 17, 2010. It appears that some of the conduct complained of in the complaint may have occurred before May 2008, and perhaps as long ago as November 2007. Plaintiff is advised that § 1983 actions are governed by the state statute of limitations for general personal injury cases in the state where the alleged violations occur. *Owens v. Okure*, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(a). Therefore, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time when his action accrues. *Id.* The time of accrual of a cause of action under § 1983 is a federal question. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."). In *Nasim*, the United States Court of Appeals for the Fourth Circuit held that a cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.* (citing *U.S. v. Kubrick*, 444 U.S. 111, 122-24 (1979)).

state actors to violate Plaintiffs' constitutional rights. To state a claim under § 1983, Plaintiffs must allege facts indicating that they were deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). The United States Constitution regulates only the government and not private parties; thus, a litigant claiming a violation of constitutional rights must first establish that the conduct he challenges constituted "state action." *See Blum v. Yaretsky*, 457 U.S. 991, 1002-05 (1982); *see also United States v. Price*, 383 U.S. 787, 794 n. 7 (1966) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."); *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'") (quoting *Blum v. Yaretsky*, 457 U.S. at 1002). To qualify as "state action," the challenged conduct "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and the "party charged with [such conduct] must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). In sum, as a private citizen Lanahan is not subject to liability under § 1983 unless he engaged in conduct that qualifies as state action.

Thus, for a private party such as Lanahan to be held liable under § 1983, Plaintiffs must allege that he engaged in a conspiracy with state actors to deprive Plaintiffs of their constitutional rights. *See Dennis v. Sparks*, 449 U.S. 24 (1980) (holding that private parties who conspired with a judge acting under color of state law could be liable under § 1983 even though

the judge was immune from damages liability); *see also Adickes v. Kress & Co.*, 398 U.S. 144, 152 (1970) (holding that a private party that engaged in racial discrimination as part of a state-enforced custom would be a state actor for purposes of § 1983). Although a party who conspires with a state official to violate constitutional rights acts under color of state law, *Tower v. Glover*, 467 U.S. 914, 920 (1984), a plaintiff must make more than a "naked assertion" of conspiracy, and a plaintiff must present facts supporting the allegation of conspiracy, *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). *See also Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983) ("[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action"). To state a conspiracy, the complaint must include allegations of fact indicating that there was a "combination, agreement, or understanding among all or between any of the defendants," *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974), and that the private actor was a "willful participant" in joint action with the state or its agents, *Dennis*, 449 U.S. at 27-28.

Plaintiffs have not alleged that Lanahan and another party "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Indeed, Plaintiffs must allege three elements to state a claim for a § 1983 conspiracy: (1) agreement between at least two parties, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional right that was violated as a proximate result of the conspiracy, *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2nd Cir. 1999), yet Plaintiffs have failed to plead sufficient facts on all three elements. "[C]omplaints containing only conclusory, vague, or general allegations that

the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993). Plaintiffs have not identified any specific conduct that could form the basis for any of the elements of a § 1983 conspiracy, or any other facts to indicate that Lanahan participated in any state action; accordingly, Plaintiffs' claim must be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[12]

## VI.

As heretofore explained, Plaintiffs' claims of federal constitutional violations filed under 42 U.S.C. § 1983 will be dismissed for failure to state a claim on which relief may be granted. Pursuant to 28 U.S.C. § 1367(c), I decline to exercise supplemental jurisdiction over the remaining claims, and the complaint will be dismissed without prejudice and stricken from the court's active docket.

The Clerk of the Court will be directed to send a certified copy of this memorandum opinion and the accompanying order to Robert Murphy, who filed this complaint on his own behalf and as "next friend" of his minor children.

Entered this 7th day of June, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[12] Similarly, to the extent the complaint could be construed as alleging that any foster parent violated Plaintffs' constitutional rights, foster parents are not state actors, unless the home is directly operated by a local department of social services. *See Pfoltzer v. County of Fairfax*, 775 F. Supp. 874, 884-85, 891 (E.D. Va. 1991) ("foster parents are not state actors," and observing that "this conclusion follows from" *Milburn v. Anne Arundel County Dept. of Soc. Serv.*, 871 F.2d 474 (1989), "which held that foster parents were not state actors within the meaning of § 1983, because the facts did not show any intimate relationship between the foster parents and the state or any detailed guidance of the parents by the state. The facts that (i) the foster parents signed a contract with the state agency and (ii) the foster home was licensed or approved by the state were not sufficient to convert private parties into state actors.").